IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**RONNIE D. REDDEN,**

  **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　Case No. 2:17-cv-01549

**DAVID BALLARD, Warden,**
**WEST VIRGINIA DIVISION OF CORRECTIONS,**
**and WEXFORD HEALTH SOURCES, INC.,**

  **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are a Motion to Dismiss Complaint filed by defendants David Ballard and the West Virginia Division of Corrections (ECF No. 12), a Motion to Dismiss Complaint filed by Wexford Health Sources, Inc. (ECF No. 14), a Motion to Dismiss Amended Complaint filed by Wexford Health Sources, Inc. (ECF No. 26), and the plaintiff's Motion for Injunction (ECF No. 35).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter is proceeding on the plaintiff's Amended Complaint (ECF No. 25), which names as defendants David Ballard, the former Warden of the Mount Olive Correctional Complex ("MOCC"), the West Virginia Division of Corrections ("WVDOC"), and Wexford Health Sources, Inc. ("Wexford"). At the time he filed both his initial

Complaint and Amended Complaint, the plaintiff was incarcerated at MOCC.[1] The Amended Complaint alleges that the plaintiff was diagnosed with Hepatitis C, which he claims to have contracted after being physically and sexually assaulted at the prison in 2004. (ECF No. 25 at 9).

Since his diagnosis, the plaintiff has repeatedly requested treatment for the disease, but "the only assistance which was available to him was through dietary adjustments, and medical monitoring for his liver and other problems related to Hepatitis C development." (*Id.* at 9-10). The Amended Complaint further alleges:

> For some time the Wexford Health Sources, Inc. [hereinafter "Wexford], who is contracted to operate the Medical Department of the MOCC facility, has issued a drug treatment for Hepatitis C named Harvoni, to select inmates, and when administered early enough those treatments seem to have been successful. However, [Wexford] has also denied such treatments of other inmates until such a time as the disease has progressed into liver failure and/or cancer sighting [sic; citing] lab numbers and treatment cost as the main factors. In those cases the inmate has died.

(*Id.* at 10). The plaintiff further alleges that Wexford staff have told him that his lab test numbers are "not high enough to receive the treatment and cure." (*Id.*)

The plaintiff further alleges that, in the summer and fall of 2016, he was treated for ringworm by Wexford Physician's Assistant, Sandra May (hereinafter "May"), with anti-fungal creams, Fluconazole, and Diflucan, which, the plaintiff asserts, are "noted for having damaging effect on the liver . . . ." (*Id.* at 11). The plaintiff expressed concerns to May that "such drugs . . . could have . . . devastating result to the plaintiff's liver and health." (*Id.*) The Amended Complaint further alleges that:

> During a medical visit to the MOCC medical unit for Chronic care, the Plaintiff complained to [May] about bad pains on the right side of his belly and side. Plaintiff was not able to sleep on the right side of my body, because

---

[1] Subsequently, the plaintiff was transferred to the Huttonsville Correctional Center ("HCC") where he remains incarcerated.

> it hurt so much. At that time, the Plaintiff again expressed his request to [sic; for] the treatment and cure for Hepatitis C. [May] told the Plaintiff that his numbers were not high enough to receive treatment for cure for Hepatitis C.

(*Id.*)

The plaintiff continued to complain to May about pains in his right side and continued to request treatment for his Hepatitis C through the spring and summer of 2017. (*Id.* at 12-13). The Amended Complaint states that, on August 22, 2017, he spoke with Dr. Lye, Wexford's physician, about the treatment and was told, "If you had $80,000.00 you could get the cure by paying for it yourself." (*Id.* at 13). The plaintiff further alleges that Sandra May also told him that "the treatment/cure costs about $10,000.00 and certain lab test numbers must be so high before Wexford will pay for the treatment/cure . . . ." (*Id.*) Thus, the plaintiff alleges that his requests for treatment continued to be denied.

The remainder of the Amended Complaint discusses the plaintiff's unsuccessful efforts to grieve Wexford's failure to provide him with the requested Hepatitis C treatment. (*Id.* at 12-13). He attached a grievance dated November 14, 2016 to his Amended Complaint, which indicates that he received a response from Donna Warden, RN, Wexford's Health Services Administrator, stating, "Mr. Redden, your lab tests and condition are being monitored in Chronic Care Clinic. At this time, you do not meet the criteria to be treated. If and when changes occur that would indicate treatment is indicated, you will be treated." (*Id.* at 17). The appeal of that grievance was accepted and Ms. Warden's response was affirmed by Warden David Ballard. (*Id.*) The grievance form does not indicate that the plaintiff appealed the Warden's decision to the Commissioner of the WVDOC; however, the plaintiff's filings insist that he mailed the grievance appeal

3

to the Commissioner and received no response. (*Id.* at 13; *see also* ECF No. 21 at 3-4; ECF No. 31 at 1-2, 8).

While the Amended Complaint contains allegations concerning the conduct of several Wexford employees who are not named as individual defendants herein, it does not contain any specific allegations aimed at Wexford itself. Nonetheless, liberally construing the Amended Complaint, as the court must, the allegations contained therein appear to be alleging that it is Wexford's policy or custom not to treat inmates with Hepatitis C with curative antiviral drug therapy, unless they meet certain unspecified criteria, due to cost.

Concerning Warden David Ballard, the Amended Complaint specifically alleges as follows:

> As the Warden of the MOCC facility, Defendant Ballard also had the authority as well as the obligation to assure that all inmates detained within the MOCC facility . . . under his supervision, care, custody, control and authority are properly treated, and that proper medical care is rendered to those under such detention.
>
> Defendant Ballard was at all time[s] fully aware that the Plaintiff only has Hepatitis C due to the brutal assault and infliction of pain upon him at the hands of a few staff who were acting within the authority of Correctional staff while violating the law and the Plaintiff's civil rights, and soliciting the assistance of a few inmates who were acting as cronies for these staff. Still Defendant Ballard refused to render any assistance getting the Plaintiff treatment.

(*Id.* at 13). The plaintiff seeks monetary damages from all of the defendants, as well as declaratory and injunctive relief in the form of treatment for Hepatitis C. (*Id.* at 14-15).

The defendants' Motions to Dismiss (ECF Nos. 12, 14, and 26)[2] assert that the plaintiff failed to exhaust the available administrative remedies, that the plaintiff has

---

[2] Even though the court had not ruled on the plaintiff's Motion for Leave to File Amended Complaint, Wexford filed a Motion to Dismiss the Amended Complaint (ECF No. 26) and a Memorandum of Law in support thereof (ECF No. 27). Defendants Ballard and the WVDOC have not filed a second Motion to

4

failed to allege a plausible Eighth Amendment claim of deliberate indifference to a serious medical need, and that the defendants are entitled to qualified immunity. The Motion to Dismiss filed by defendants Ballard and the WVDOC further asserts that the WVDOC and defendant Ballard in his official capacity are not persons under 42 U.S.C. § 1983 and are immune from damages under the Eleventh Amendment. The undersigned will address these defenses as necessary *infra*.

On January 31, 2018, the plaintiff filed a Motion for Injunction (ECF No. 35), seeking an injunction requiring the defendants to treat him for Hepatitis C. The plaintiff claims that the defendants have subjected him to serious risk of harm to his health and safety and denied him "equal treatment" by denying him needed medical treatment (Harvoni or other DAA[3] drugs) for Hepatitis C. (*Id.* at 1-2). The plaintiff's motion cites to several recent court decisions that have recognized the potential significance of the developments in the treatment protocol for Hepatitis C and found that claims for denial of such treatment can support a plausible Eighth Amendment claim. (*Id.* at 4-5). The motion then sets forth the standard for granting preliminary injunctive relief as discussed in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). (*Id.* at 5-6). The defendants filed a Joint Response to the Motion for Injunction (ECF No. 37), asserting that the plaintiff cannot meet the *Winter* standard for a preliminary injunction.

---

Dismiss. Nonetheless, because the undersigned is recommending dismissal of the plaintiff's Amended Complaint, in part, on grounds previously raised in defendant Ballard and the WVDOC's initial Motion to Dismiss, which are still applicable, the undersigned will incorporate those arguments as though they concern the Amended Complaint.

[3] As further discussed below, "DAA" drugs are "direct acting antiviral" drugs.

## **STANDARD OF REVIEW**

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Additionally, a district court must dismiss a claim if, at any time, it appears that the court lacks jurisdiction over the subject matter of the claim. Fed. R. Civ. P. 12(h)(3); *Duffield v. Memorial Hosp. Ass'n,* 361 F. Supp. 398 (S.D. W. Va. 1973), *aff'd sub. nom. Duffield v. Charleston Area Medical Ctr.*, 503 F.2d 512 (4th Cir. 1974); *see also Bolin v. Chavez*, 210 F.3d 389 (10th Cir. 2000) (permitting *sua sponte* dismissal for lack of subject matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure).

## ANALYSIS

### A. The WVDOC and Warden David Ballard in his official capacity are immune from a suit for damages under section 1983 in federal court.

To the extent that the plaintiff is seeking monetary damages from the WVDOC and defendant David Ballard in his official capacity, such relief is barred by the Eleventh Amendment to the United States Constitution. Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). Moreover, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State nor its officials acting in their official capacities are "persons" under section 1983. Thus, the undersigned proposes that the presiding District Judge **FIND**

7

that the plaintiff cannot state any plausible claims for relief against the WVDOC or Warden David Ballard in his official capacity.

### B. The defendants are entitled to qualified immunity on the plaintiff's claims for monetary damages.

Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." M*eyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991). In *Pearson v. Callahan,* the Supreme Court held that a court may exercise its sound discretion to decide which prong of the inquiry to address first. 555 U.S. 223, 242 (2009); *see also Oliver v. Fiorino*, 586 F.3d 989, 905 (11th Cir. 2009). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). (ECF No. 65 at 36-37).

The plaintiff claims that the defendants' deliberate indifference to a serious medical need has violated his rights under the Eighth Amendment's guarantee against cruel and unusual punishment. The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

8

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by <u>a person</u> acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.* at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

> confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*.*" *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See* [*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)].

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Because Wexford, a private corporation, is the contracted medical provider for the WVDOC, a state agency, the deliberate indifference standard is applicable to the conduct of both Wexford and its individual employees, who may be considered to be acting under color of state law, and, thus, may raise a qualified immunity defense. *West v. Atkins*, 487 U.S. 42 (1998); *Filarsky v. Delia*, 566 U.S. 377, 393-394 (2012) (private parties compelled by the government to undertake duties that would otherwise be performed by a public official are entitled to raise a qualified immunity defense). The Fourth Circuit and other federal courts have held that "[a] private corporation is liable under § 1983 . . . when an official policy or custom causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D. W. Va., Dec. 18, 2008) (Faber, J. (unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services,*

11

*Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

Furthermore, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shakka v. Smith*, 71 F,3d 162, 167 (4th Cir. 1995). Thus, to establish a claim of deliberate indifference against non-medical prison personnel, such as Warden David Ballard, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853.

The defendants' motions assert that the plaintiff has not stated a plausible Eighth Amendment claim of deliberate indifference to a serious medical need because the plaintiff has alleged nothing more than a difference of opinion as to what treatment is medically necessary. (ECF No. 13 at 4; ECF No. 15 at 11; ECF No. 27 at 8). The defendants assert that the plaintiff participates in the prison's Chronic Care Clinic and has regular blood work, which is monitored for any changes in his test results that would demonstrate the need for DAA drug treatment. (ECF No. 15 at 11; ECF No. 27 at 8).

The plaintiff, on the other hand, contends that recent decisions of other federal and state courts recognize that the failure to treat inmates with the newest DAA drugs can state a plausible Eighth Amendment claim. Among those decisions, the undersigned believes that the opinion in *Cunningham v. Sessions*, No. 9:16-cv-1292, 2017 WL 2377838 (D.S.C. May 31, 2017) is particularly instructive herein.

In *Cunningham*, the plaintiff (Cunningham), an inmate at a federal prison in Bennettsville, South Carolina, sought treatment for Hepatitis C with the new generation of DAA drugs, and was refused. Similar to the plaintiff herein, Cunningham filed a

12

complaint alleging that the defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment, and sought declaratory and injunctive relief, as well as monetary damages.

The *Cunningham* decision details the advances that have been made in the medications and treatment protocol for Hepatitis C, and determined that the refusal to provide curative therapy for Hepatitis C could plausibly state a claim under the Eighth Amendment. *Id.* at 1, 4-5. Specifically, the court noted:

> The Centers for Disease Control and Prevention ("CDC") has recognized that chronic Hepatitis C is a serious medical condition which can result in long term health problems, including cirrhosis of the liver, liver cancer, and death. [Footnote omitted]. There was no known cure for chronic Hepatitis C until very recently, and the therapies previously available produced inconsistent results and severe side effects. Since 2011, the FDA has approved [a] new generation of DAA drugs which have proven to be highly effective in the treatment and cure of Hepatitis C with minimal side effects.
>
> In response to the proven effectiveness of DAA drugs in curing Hepatitis C, two prominent professional associations of physicians specializing in the treatment of liver disease, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Disease Society of America ("IDSA"), issued new joint recommendations for the treatment of chronic Hepatitis C in June 2016. The joint recommendation recognized that the new DAA drugs provided a "virologic cure" for chronic Hepatitis C and recommended that DAA drugs be administered to "all patients with chronic [Hepatitis C] infection" except those with short life expectancies in which transplantation or other direct treatment was not available. It also noted that delays in treatment of Hepatitis C with DAA drugs reduced the effectiveness of the drugs. [Footnote omitted]. These joint recommendations of the AASLD and IDSA were subsequently endorsed by the CDC as [] "evidence-based, expert-developed recommendations for hepatitis C management." [Footnote omitted].

*Id.* at 1. Thus, the court found that Cunningham's complaint could state a plausible Eighth Amendment claim, stating:

> In reaching the conclusion that Plaintiff has plausibly set forth a claim under the Eighth Amendment, the Court is mindful of the rapidly evolving medical and legal issues generated by the FDA's approval of a new generation of highly effective and curative DAA drugs, the recent

13

> pronouncements of professional organizations of liver specialists stating that treatment of essentially all patients with chronic Hepatitis C with DAA drugs is now the standard of care, and the endorsement of these new recommendations by the CDC. The Court is also aware of recent court decisions which have recognized the potential significance of these developments in addressing claims of state and federal inmates with chronic Hepatitis C who have been denied treatment with DAA drugs. *See Allah v. Thomas*, \_\_\_\_ Fed. Appx. \_\_\_\_, 2017 WL 568313 (3rd Cir. Feb. 13, 2017) (reversing district court's dismissal of state inmate's Eighth Amendment claim for refusal to provide treatment with DAA drugs); *Postawko v. Missouri Department of Corrections*, C.A. No. 2:16-4219-NKL, 2017 WL 1968317 (W.D. Mo. May 11, 2017) (denying defendants' motion to dismiss state inmate's Eighth Amendment claim for denial of DAA drugs for chronic Hepatitis C); *Bernier v. Trump*, C.A. No. 16-828 (APM), 2017 WL 1048053 (D.D.C. Mar. 17, 2017) (denying motion to dismiss BOP inmate's Eighth Amendment claim for denial of DAA drugs); *Henderson v. Tanner*, C.A. No. 15-804-SDD-EWD, 2017 WL 1015321 (M.D. La. Mar. 15, 2017), adopting Report and Recommendation 2017 WL 1017927 (Feb. 16, 2017) (denying motion to dismiss state inmate's Eighth Amendment claim for refusal to treat with DAA drugs); *Abu-Jamal v. Wetzel*, C.A. No. 3-16-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017) (granting preliminary injunctive relief to state prisoner with chronic Hepatitis C and directing prison officials to provide plaintiff DAA drug treatment).

*Id.* at 5.

The district court concluded that Cunningham's allegations were sufficient to survive a motion to dismiss concerning his claims for declaratory and injunctive relief. However, the court granted qualified immunity to the defendants on Cunningham's claims for damages based on the "rapidly evolving" legal and medical developments and the absence of any controlling precedent from the Supreme Court or the United States Court of Appeals for the Fourth Circuit. *Id.* at 4. The court stated:

> [T]here is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with DAA drugs. Consequently, Defendants in this action are entitled to qualified immunity for any damages claims arising from the denial of DAA drugs to inmates.

*Id.* The undersigned believes that this district court should make a similar finding with respect to the plaintiff's claims for damages herein. Accordingly, the undersigned

14

proposes that the presiding District Judge **FIND** that the defendants herein are entitled to qualified immunity on the plaintiff's claims for monetary damages against them arising out of the failure to treat him with DAA drugs for Hepatitis C.

### B. The plaintiff's claims for declaratory and injunctive relief are moot.

Subsequent to the filing of his Amended Complaint, but before he filed his Motion for Injunction, the plaintiff was transferred from MOCC to HCC, which is within the jurisdiction of the United States District Court for the Northern District of West Virginia. Based upon the plaintiff's transfer, all forms of declaratory and injunctive relief sought in this court are now moot.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his

incarceration there.") For these reasons, the undersigned proposes that the presiding District Judge **FIND** that any claims for declaratory and injunctive relief made by the plaintiff herein must be denied and dismissed as moot.

The undersigned is uncertain of the plaintiff's current treatment status at HCC. Nonetheless, if the plaintiff still wishes to pursue declaratory and injunctive relief concerning his treatment for Hepatitis C, he must, after exhausting the available administrative remedies at that prison, file a new action in the United States District Court for the Northern District of West Virginia, which is the court with proper jurisdiction over his current custodian and the proper venue for such a claim.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF Nos. 12, 14 and 26), **DENY AS MOOT** the plaintiff's Motion for Injunction (ECF No. 35), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 17, 2018

Dwane L. Tinsley
United States Magistrate Judge